

20060921-0003597

Fee: $32.00
N/C Fee  $0.00

09/21/2006        13:25:08
T20060164404
Requestor:
  NATIONAL SEARCH SOLUTIONS

Charles Harvey          RMS
Clark County Recorder   Pgs: 19

A.P.N.:138-25-615-026
Recording Requested by: LSI
When Recorded Mail to:
Custom Title Solutions
2550 North Red Hill Avenue
Santa Ana, CA 92705
800-756-3524

**Received**
FEB 1 6 2007
Samantha Lopez

Loan Number:
CTS# 2668270 (H) 22798

## Deed of Trust



RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:

ASSESSOR'S PARCEL NUMBER:
13825615026

FOR RECORDER'S USE ONLY

# OPEN END DEED OF TRUST
(SECURING FUTURE ADVANCES)
THIS DEED OF TRUST IS SECURITY FOR AN EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT MATURING NO LATER THAN October 15, 2036.

THIS DEED OF TRUST (herein called the "Security Instrument") is made this **16th** day of September, 2006, among the Trustor, **JOSE A AZMITIA, A MARRIED MAN**

(herein "Borrower"), **Golden West Savings Association Service Co., A California Corporation** (herein "Trustee"), and the Beneficiary, **WORLD SAVINGS BANK, FSB,, ITS SUCCESSORS AND/OR ASSIGNEES**, and whose address is 1901 Harrison Street, Oakland, CA 94612 (herein "Lender").

SD845A2 (2004-12-2)     Page 1     NV
ELOC

LENDER'S USE ONLY

**PURSUANT TO** an Equity Line of Credit Agreement and Disclosure Statement dated September 16, 2006 (herein "Note"), Borrower may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of **TEN THOUSAND ONE HUNDRED AND 00/100** Dollars (U.S. **$10,100.00**), which is due and payable, if not sooner paid, no later than the 30th anniversary of the opening of the Equity Line of Credit

**BORROWER, IN** consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **CLARK** State of **NEVADA SEE EXHIBIT "A," ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN**, which has the address of **5129 CANNON BLVD, LAS VEGAS, NV 89108-1311** ("Property Address")

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, fixtures and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Security Instrument and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property";

**TO SECURE** to Lender (a) the repayment of all sums now or hereafter advanced under the terms of the Note (including, without limitation, such sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Note), with interest, and all renewals, extensions and modifications of the Note, (including, without limitation, any modifications that increase the Credit Limit of the Note), this subsection (a) being collectively included within the term "Note" in this Security Instrument, (b) the payment of all other sums, with interest, advanced under this Security Instrument to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

**BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:**

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and all other charges due under this Security Instrument and due under the Note. Payments due under the Note and this Security Instrument shall be made in U S Dollars by check or money order. If any check or other instrument received by Lender as payment is returned to Lender unpaid, Lender may (a) charge Borrower the non-sufficient funds (NSF) fee specified in the Note or, if the Note does not specify any such fee amount, an amount not to exceed the maximum NSF charge permitted by applicable law; and (b) require that any or all subsequent payments be made by money order or with certified funds. If Borrower is in default,

Lender may require Borrower to make any payment needed to cure the default by money order or with certified funds "Certified funds" means a certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12 Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) is insufficient to bring Borrower's obligations current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Borrower's obligations current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future.

**2. Funds for Escrow Items.** At loan origination or at any time thereafter, Lender may require that Borrower pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) condominium or homeowners association dues, fees and assessments, if any. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 2 Any waiver by Lender of Borrower's obligation to pay Funds to Lender may only be in writing.

When Borrower is not required to pay for Escrow Items by paying Funds to Lender, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. If Borrower is obligated to pay Escrow Items directly and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may require that Borrower then pay to Lender Funds for any or all Escrow Items by a notice given in accordance with Section 12, and Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S C 2601 et. seq ) and its implementing regulation, Regulation X (24 C F.R. Part 3500), as they or any successor legislation or regulation might be amended from time to time ("RESPA") and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires Lender to pay interest on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument Lender shall promptly refund to Borrower any Funds held by Lender. If under Section 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless the Note or applicable law requires otherwise, Lender will apply payments received under Sections 1 and 2 in the order selected by Lender.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property (including, without limitation, all dues, fees, assessments and other charges that are imposed on the Property by any applicable condominium association, homeowners association or similar organization), which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any.

Borrower agrees that Borrower will not obtain any additional advances, whether voluntary or involuntary, or allow any modification or extension of any loan secured by a lien or other encumbrance with a priority senior to this Security Instrument without the prior written consent of Lender Violation of this provision shall constitute a default under this Security Instrument entitling Lender to all rights and remedies afforded herein, in law or equity, including but not limited to, acceleration of the loan

Borrower further agrees to deliver to Lender any notices that Borrower receives from the holder of any such senior lien or encumbrance

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this loan, a one-time charge for flood zone determination and certification and a one-time charge for tracking services. Borrower also shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense, pursuant to Section 7 below. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance coverage that Borrower could have obtained.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage not otherwise required by Lender, such as credit life and/or disability insurance or earthquake or other hazard insurance for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

If the Property is a unit in a condominium, cooperative or planned unit development (the "Project") and the Project is covered by a master or blanket policy maintained by the Project's owners association, in the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was specifically required by Lender, in lieu of restoration or repair following a loss to the Property and/or the Project,

any proceeds payable to Borrower and/or Lender are hereby assigned and shall be paid to Lender for application to sums secured by this Security Instrument, with any excess paid to Borrower Borrower shall take such actions as may be reasonable to insure that the Project's owners association maintains a public liability insurance policy acceptable to Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion regardless of any impairment or lack of impairment of any security, as follows (a) to the extent allowed by applicable law, to the sums secured by this Security Instrument in a manner that Lender determines and/or (b) to restoration or repair of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender During any repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or applicable law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 17 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund or unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

If any insurance proceeds are used to reduce the amount of principal owing to Lender under the Note, that use will not delay the due date or change the amount of regularly scheduled payments under the Note, unless Lender and Borrower agree to such delay or change in writing.

**6. Preservation and Maintenance of Property; Assignment of Rights for Injury to Property.** Borrower shall keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations, not commit waste or permit impairment or deterioration of the Property, comply with the provisions of any lease if this Security Instrument is on a leasehold, and, if this Security Instrument is on a unit in a Project, (a) perform all of Borrower's obligations under the declaration or covenants creating or governing the Project, the by-laws and regulations of the Project, and constituent documents, and (b) pay when due all dues, fees, assessments and other charges that are imposed on Borrower or the Property by the condominium association, homeowners association or similar organization.

An **assignment** is a transfer of rights to another. Borrower may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Borrower assigns these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to sums secured by this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, Borrower will sign any further assignments or other documents that may be necessary to enforce this assignment.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which might materially affect Lender's interest in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or ordinances), or if Borrower abandons the Property, then Lender may do and pay for whatever it deems reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5 above (such insurance may cost more and provide less coverage than the insurance Borrower might purchase), and paying any sums secured by a lien which has priority over this Security Instrument. Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. Nothing contained in this Section 7 shall require Lender to incur any expense or take any action hereunder.

Lender also may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by applicable law.

If Lender required mortgage insurance as a condition of making the loan, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

In the event Borrower is subject of a bankruptcy proceeding and delinquent amounts owing under the Note and/or this Security Instrument are to be paid according to a plan requiring approval of the bankruptcy court, Borrower agrees that such bankruptcy plan shall provide for interest on all delinquent amounts being paid through the plan (including, without limitation, principal, interest or periodic finance charges, fees and charges under the Note, and Lender advances, fees and charges under this Security Instrument) at the then current rate of interest provided in the Note.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument

**10. Borrower Not Released; Forbearance By Lender Not a Waiver; No Offset.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of Section 16 hereof All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

**12. Notice; Notice of Grievance.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other single address as Borrower may designate by notice to Lender as provided herein, and (b) except as permitted below for changes of address, any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other single address as Lender may designate by notice to Borrower as provided herein. Borrower may give notice to Lender of a change of Borrower's address in writing or by calling Lender's customer service telephone number provided on Borrower's billing statement. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party(with such notice given in compliance with this Section 12) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If applicable law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 12.

**13. Governing Law; Severability; Loan Charges.** This Security Instrument shall be governed by federal law, rules, and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

If a law which sets maximum loan charges is finally interpreted so that such law is applicable to Lender and that the interest or other loan charges collected or to be collected in connection with the Note or the Security Instrument exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Borrower's Copy; Modification; Clerical Errors; Replacement Documents.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof. The Note and/or this Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender. In the event Lender at any time discovers that the Note and/or this Security Instrument contains an error caused by a clerical mistake or calculation, computer, printing or similar error, Borrower agrees to reexecute the document(s) containing the error and to hold Lender harmless for any such error. If any document evidencing this loan is lost, stolen, mutilated or destroyed, and Lender delivers a signed indemnification in Borrower's favor, then Borrower agrees to sign and deliver to Lender a replacement document identical in form and content which will have the effect of the original for all purposes.

**15. Borrower's Loan Application.** Borrower shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.

Lender extended Borrower this loan in reliance upon Borrower's representation in the loan application that Borrower intends to occupy the Property as Borrower's principal residence. Lender may have provided Borrower more favorable loan terms, such as a lower interest rate in the Note or a higher loan-to-value, than otherwise would have been made available in the absence of Borrower's representation. Borrower agrees to occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and to continue to occupy the Property as Borrower's principal residence for at least one year thereafter, unless extenuating circumstances exist which are beyond Borrower's control.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Federal Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS SPACE INTENTIONALLY LEFT BLANK.**

**17. Acceleration; Remedies.** Borrower will be in default if (a) the full minimum payment due under the Note, or any other payment required by the Note or this Security Instrument, is not made when it is due; (b) Borrower has engaged in fraud or made a material misrepresentation at any time in connection with the equity account evidenced by the Note; (c) Borrower takes any action or fails to take any action that adversely affects the Property or Lender's rights in the Property. If a default occurs (other than under Section 16 unless otherwise required by applicable law), Lender shall give notice to Borrower prior to acceleration. The notice shall specify: (1) the default, (2) the action required to cure such default; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such default must be cured; and (4) that failure to cure such default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence, (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Security Instrument or

at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Security Instrument or at any time prior to entry of a judgment enforcing this Security Instrument if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's and Trustee's remedies as provided in Section 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, the right to reinstate shall not apply in the case of acceleration under Section 16.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and to the extent permitted by applicable law, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under Section 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable

Upon acceleration under Section 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, maintenance and repairs of the Property, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. Lender and the receiver shall be liable to account only for those rents actually received

**20. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to Borrower or other person(s) legally entitled to it  Borrower or such other person(s) will pay all recordation costs. Lender also may charge Borrower or such other person(s) a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Statement of Obligations.** Lender may collect a fee of $40 00 for furnishing a statement of obligation, payoff demand statement, or any similar statement. Lender will deliver such statement by first class mail. If Lender is requested by Borrower or Borrower's agent to deliver such statement by facsimile transmission, Lender may collect a special handling charge of $10 for each such delivery and need not send a copy of such statement by first class mail.

**23. ( x ) Quick Qualifying Loan.** Borrower applied for this loan under Lender's "Quick Qualifying" loan program Borrower acknowledges that Lender relied upon certain statements of fact made by Borrower in approving the loan without requiring full documentation from Borrower and certain information verifications from third parties, enabling Borrower to obtain this loan rapidly These statements included, but are not limited to, Borrower's certification that (a) except for any loan made by Lender concurrently with this loan, Borrower has no other "Quick Qualifying" loan with Lender, and (b) there are no undisclosed financial arrangements circumventing the terms of this loan transaction, including, but not limited to, unauthorized secondary financing, sales price adjustments, equity exchanges, credits to down payments or payments made outside escrow, or illusory transfers of title. Borrower agrees that Lender may deem Borrower to be in material breach of this section if any secondary financing is obtained, or an escrow is opened, on the Property within six months of the date of this Security Instrument. Borrower shall be in default if any material statements of fact or any of the above certifications were false or misleading, or if Borrower is in material breach of this Section.

Notwithstanding anything to the contrary in the Note or this Security Instrument, in the event of Borrower's default under this Section, Lender, at its option, may (1) accelerate the loan in accordance with Section 16 without Borrower having the right of reinstatement under Section 18, or (2) increase the applicable interest rate under the Note by two percentage points (2.00%) for the remaining term of the Note (but not to exceed any lifetime interest rate cap or any maximum rate allowed by applicable law) and make corresponding changes to Borrower's periodic payment amount in order to amortize the loan according to the Note

**24. (  ) Affordable Housing Program.** The obligation evidenced by the Note is the repayment of down payment and/or closing cost assistance provided to Borrower through a Federal Home Loan Bank's Affordable Housing Program Notwithstanding anything to the contrary in this Security Instrument, this Security Instrument may be subordinate to more than one instrument and interest does not accrue on down payment and/or closing cost assistance amounts In the event of any conflict between the provisions of the Note and this Security Instrument, the Note provision shall prevail.

( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
JOSE A AZMITIA

Mailing Address: JOSE A AZMITIA
5129 CANNON BLVD, LAS VEGAS, NV 89108-1311

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD845 (2004-03-1)                          Page 14                                    NV
                   [AL7 (2004-03-1)]

STATE OF  _NEVADA_

COUNTY OF _CLARK_

On _SEPT. 16, 2006_ before

Me, _ARTHUR GAMBOA_ Notary Public

Personally
Appeared _JOSE A. ALMITIA_

~~Personally known to me~~ (or proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity (~~ies~~), and that by his/~~her/their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

WITNESS my hand and official seal.

_Arthur Gamboa_
Signature of Notary Public

(This area for notarial seal)



NOTARY PUBLIC
County of Clark-State of Nevada
ARTHUR GAMBOA
No. 05-99506-1
My Appointment Expires Sept. 8, 2009

BORROWER(S)' SPOUSE(S): The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S)' SPOUSE(S):

X _____ (Seal)

AIDA AZMITIA

Mailing Address: JOSE A AZMITIA
5129 CANNON BLVD, LAS VEGAS, NV 89108-1311

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD845 (2004-03-1)                                Page 15                                NV
[AL6 (2004-03-1)]

## EXHIBIT "A"

Lot 8 of Block 5 in AMENDED GOLF RIDGE TERRACE UNIT #3 Subdivision, City of LAS VEGAS, County of CLARK, in the State of NV. As recorded in MB5 PG83

WITH THE APPURTENANCES THERETO